NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BERRYFAST, INC., Respondent.

No. 83–7736.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1984.

Decided Aug. 28, 1984.

Collis Suzanne Stocking, Deputy Assoc. General Counsel, N.L.R.B., Washington, D.C., for petitioner.

Michael J. Bobroff, Husch, Eppenberger, Donohue, Elson, & Cornfield, St. Louis, Mo., for respondent.

Before GOODWIN, WALLACE and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

At issue here is the National Labor Relations Board's (the Board) decision not to set aside a representation election because of failure of an employee to cast a key vote. The Board found that the employee did not take reasonable steps to vote and petitions this court for enforcement of its order directing Berryfast, Inc. (the Company) to bargain with the Sequoia District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO (the Union). The Board found that the Company violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1), by refusing to bargain with the Union. The Company admits its refusal to bargain, but argues it had no duty to bargain because the Board improperly certified the Union as the exclusive bargaining representative of the Company's production employees. We disagree. There is substantial evidence to support the Board's decision not to set aside the election. We therefore enforce the Board's order.

## BACKGROUND

On September 11, 1981 the Board held a representation election for the thirty-six production employees at the Company's Tulare, California plant. Eighteen votes were cast for the Union and seventeen against. The Company contends that because one production employee, Jeannette Turner, was denied her right to vote in the election, the election should be set aside.

All parties had agreed that the eligibility date for employees to participate in the election was the payroll period ending August 7, 1981. The Company compiled an eligibility list from the payroll records for that week. Jeannette Turner was on temporary leave of absence at the time. Consequently, her name did not appear on the payroll printout, and therefore did not appear on the eligibility list.

Two to three weeks prior to the election she and her husband, who was also a production employee at the plant and whose name did appear on the eligibility list, discussed her eligibility to vote. Neither, however, asked anyone at the Company or from the Board about her eligibility until the day of the election. That morning, an hour before the polls were to open, Mr. Turner approached Larry Gooden, the Company's chief operating officer who had compiled the eligibility list, and asked whether Mrs. Turner would be allowed to vote. Gooden replied that she could not vote, because her name was not on the list. Mr. Turner phoned his wife and informed her of Gooden's response. Neither Mr. nor Mrs. Turner inquired further, nor did Mrs. Turner come to the polling place to attempt to cast a challenged ballot.

A clearly posted Notice of Election directed all inquiries concerning eligibility rules to the Regional Director or the Board agent in charge of the election. A Board agent was present at the election. When asked whether he had attempted to talk with that agent, Mr. Turner stated that he had not because:

I just assumed that it was pretty cut and dried because of her not being on the payroll. They would probably tell me

the same thing, so I didn't even think to ask.

The Hearing Officer concluded from these facts that because Mrs. Turner was eligible to vote and had been disenfranchised through no fault of her own, and because her vote could have changed the result of the election, the election should be set aside. The Board reversed. In rejecting the conclusion that Mrs. Turner had been disenfranchised through no fault of her own, the Board noted that she had not come to the polling place, and that neither she nor her husband had made any attempt to ask the Board representative in charge of the election about her eligibility.

## DISCUSSION

◼ In determining when an election should be set aside, the Board must balance the strong need to assure that all eligible employees have been given an opportunity to vote, *see NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946), against the competing policy favoring "prompt completion of election proceedings." *See Versail Manufacturing, Inc.*, 212 N.L.R.B. 592, 593 (1974). The Board will not set aside an election where an employee, whose vote might have been outcome determinative, simply decides not to vote or does not take reasonable steps to attempt to vote. *See, e.g., NLRB v. Triangle Express, Inc.*, 683 F.2d 337, 338–39 (10th Cir.1982) (election not set aside where part-time employees omitted from eligibility list made no attempt to vote by challenged ballot); *NLRB v. Olson Bodies, Inc.*, 420 F.2d 1187, 1188–89 (2d Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 966, 28 L.Ed.2d 237 (1971) (election not set aside where employee failed to vote because of illness); *Versail Manufacturing, Inc.*, 212 N.L.R.B. 592 (1974) (election not set aside where employee away from polling place on work assignment could have returned in time to vote but chose not to); *Wanzer Dairy Division of Southland Corp.*, 232 N.L.R.B. 631 (1977) (election not set aside where severe storm prevented employee from reaching polling place in

time to vote). *But cf. Kansas City Bifocal Co.*, 236 N.L.R.B. 1663 (1978) (election set aside without regard to employee's conduct).[1]

█ The Board has wide discretion to determine representation matters and questions arising during the election proceedings. *NLRB v. A.J. Tower Co.*, 329 U.S. at 330, 67 S.Ct. at 327; *Spring City Knitting Co. v. NLRB*, 647 F.2d 1011, 1017 (9th Cir.1981). Hence, it is for the Board to determine whether Mrs. Turner made a reasonable effort to avail herself of the opportunity to vote, and we will accept the Board's determination if it is supported by substantial evidence. *Presto Casting Co. v. NLRB*, 708 F.2d 495, 498 (9th Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 489, 78 L.Ed.2d 684 (1984); *International Telephone & Telegraph Corp., Industrial Products Division v. NLRB*, 294 F.2d 393, 395 (9th Cir.1961).

We find instructive the Fifth Circuit's opinion in *NLRB v. W.R. Grace & Co., Construction Products Division*, 571 F.2d 279 (5th Cir.1978). There, an employee went to the polling place to vote but left without protest after a *Board* agent informed him that he could not vote because his name was not on the eligibility list. Because the employee did not discuss the matter with the Board agent further or give the agent an opportunity to explain the challenged ballot procedure, the Board concluded that the employee had not taken sufficient reasonable steps to vote. The court found that substantial evidence supported the Board's conclusion. *Id.* at 282.

█ If the employee in *W.R. Grace* did not take sufficient reasonable steps to vote, certainly Mrs. Turner did not. She did not even go to the polling place, and despite a clearly posted notice directing all inquiries concerning voter eligibility to the Board agent, she never sought that agent's advice. Instead, she remained content to accept the conclusion of an employer representative that she could not vote. There is

substantial evidence to support the Board's conclusion that she did not take reasonable steps to vote.

The Board's order requiring the Company to bargain with the Union is EN-FORCED.

---

1. To the extent that *Kansas City Bifocal* can be said to be contrary to the Board's other rulings regarding an employee's efforts to vote, we find the case aberrational and refuse to conclude on the basis of that one case that the Board's ruling here is contrary to establish Board precedent.